## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KAREN S. MCINNIS** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO.:** |
| | * | |
| **STATE FARM MUTUAL AUTOMOBILE** | * | **SECTION:** |
| **INSURANCE COMPANY** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Karen S. McInnis, a person of the full age of majority and resident of the Parish of St. Tammany, State of Louisiana, who represents the following:

**Defendant**

1.

Made defendant herein is State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), a foreign insurance company authorized to do and doing business in the State of Louisiana.

**Jurisdiction**

2.

Jurisdiction is based upon diversity of citizenship and requisite jurisdictional amount pursuant to 28 U.S.C. 1332, et seq.

3.

The amount in controversy herein exceeds seventy-five thousand and no/100 dollars ($75,000.00), excluding interest and costs.

**Venue**

4.

Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391.

**Facts**

5.

On or about August 12, 2018, just before 7:00 p.m., Plaintiff was driving a 2018 Toyota Camry with the permission of the vehicle's owner, Carolyn M. Clawson, M.D. (also known as Mrs. Carolyn M. C. Prickett) ("Dr. Clawson,") in the right of two eastbound lanes of Florida Street in Mandeville, Louisiana. Plaintiff had the right of way, and was accelerating to the maximum speed limit of 45 mph, which she had almost reached. At the same time, Amie Perrilloux, who was driving south on Carondelet Street, crossed the two west bound lanes of traffic on Florida Street, briefly came to a jerked stop in the space between the west bound and east bound lanes, and rather than stay stopped until she could proceed safely, Ms. Perrilloux immediately charged her vehicle forward with intensity and rapidity into the two east bound lanes, at which point Plaintiff slammed on her brakes and turned towards the right, but was unable to avoid collision.

6.

At the point Ms. Perrilloux drove her vehicle into the Plaintiff's path, Plaintiff estimates there to have been approximately twenty feet between the vehicles, and that Plaintiff may have been in Ms. Perrilloux's blind spot, which would be consistent with Ms. Perrilloux's remarks made immediately thereafter "Oh my God, I didn't even see you."

7.

The investigating police officer, Michael Lorenzen, issued a citation to Amie Perrilloux for violation of La. R.S. 32:121 (failure to yield the right of way). The crash report noted that Plaintiff

committed, "no violation." Plaintiff is free from fault in causing or contributing to the accident in any way.

8.

The impact of the crash caused the tire of the offending vehicle to be bent sideways, which would have been the same force with which Plaintiff's person was thrown into the front left area of the cab, causing her to strike her body and head against the driver's door and window.

9.

The sole and proximate cause of the above referenced accident was the negligence and fault of the Amie Perrilloux, which is attributed to but not limited to the following non-exclusive particulars:

    a.    Failure to yield the right of way

    b.    Failure to maintain a proper lookout;

    c.    Failure to see what he should have seen;

    d.    Failure to keep a good and careful lookout;

    e.    Failure to maintain reasonable and proper control of the vehicle which she was operating;

    f.    Operating her vehicle in a careless and reckless manner without regard for the safety of others;

    g.    Any and all other acts of negligence which may be proven at the trial of this matter.

10.

Ms. Perrilloux's negligence caused the injuries and damages that Plaintiff has suffered and continues to suffer to a degree, including: (1) Post-concussion syndrome; (2) Traumatic brain injury (TBI); (3) Psychological injury; (4) Jaw injuries, including: bilateral TMJ pain; (5) Neck injuries, including one cervical bulging disc (C5-6); (6) Left shoulder injuries, including: rotator cuff strain/contusion, scapular dyskinesia, tendinitis, and bursitis; (7) Soft tissue defect

(indentation) along the lateral aspect of the mid arm; (8) Upper and lower back injuries, including: bulging/protruding thoracic disc that effaces the thecal sac (T10-11) and three bulging lumbar discs (L2-3, L3-4 and L4-5); (9) Pelvic injuries; (10) Bilateral knee injuries; and (11) Left hand/finger injuries.

11.

At the time of the collision, Aime Perrilloux had liability insurance coverage with State Farm in the amount of fifteen thousand dollars ($15,000.00). Ms. Perrilloux did not have any additional insurance coverage and signed an Affidavit of No Other Insurance in this regard.

12.

On or about December 11, 2018, Plaintiff made excess demand upon State Farm for Ms. Perrilloux's liability policy limits of $15,000, which after much effort on the part of Plaintiff, was finally tendered on or about January 4, 2019.  Ms. Blake Ross was the adjuster assigned to the liability claim, however, she was on vacation when State Farm finally determined to tender the liability policy.

13.

Plaintiff's damages far exceed the $15,000 tendered by State Farm pursuant the liability policy issued to Aime Perrilloux.  Ms. Perrilloux was underinsured with respect to the injuries suffered by Plaintiff.

14.

As a result of the accident complained of herein, Plaintiff suffered severe damages to her mind and body which include:

    a.    Past medical and diagnostic expenses, which as of April 8, 2020, totaled $66,414.75;

    b.      Future medical and diagnostic expenses;

    c.      Loss of earning capacity; and

    d.      General damages, including past and future pain and suffering, mental anguish, inconvenience, disability, disfigurement, and loss of enjoyment of life.

## Bad Faith

15.

At the time of the collision, as the permissive driver of Dr. Clawson's 2018 Toyota Camry, Plaintiff was covered by State Farm policy (# 034 3541 E09-18C), (hereinafter "State Farm Policy,") which had been sold to and delivered by State Farm to Dr. Clawson and was in full force and effect at the time of the collision referenced above.

16.

The State Farm Policy issued to Dr. Clawson includes uninsured/underinsured motorist provisions ("UM"), which provide coverage to Plaintiff for the damages sustained resulting from the negligent acts of the tortfeasor, Aime Perrilloux, in excess of amounts recoverable from the liability policy of Amie Perrilloux.

17.

Pursuant to La. R.S. 22:1295(1)(c)(i), the UM provisions of the State Farm Policy are primary and of higher priority than any other uninsured motorist coverage available to Plaintiff.

18.

The State Farm Policy issued to Dr. Clawson additionally includes medical payment ("Med Pay") benefits, which provide coverage to Plaintiff for medical expenses relating to the diagnosis and treatment of injuries suffered by Plaintiff resulting from collision referenced above.

19.

Between August 12, 2018 and April 11, 2019, State Farm paid to Plaintiff a total of $25,000 pursuant to the Med Pay provision of Dr. Clawson's State Farm Policy, reflecting reimbursement for only a portion of Plaintiff's medical expenses related to the diagnosis and treatment of her accidental injuries during that period, which sum exhausted the said Med Pay benefits.

20.

Ms. Blake Ross, referenced in Paragraph 12 above, was not only the adjuster for the liability claim, but also the adjuster who advised of the Med Pay benefits and oversaw the administration of the Med Pay benefits.  She was and continues to be the adjuster of the Plaintiff's UM claim.

21.

On or about January 10, 2019, despite voluminous supporting documentation in its possession in connection with both Plaintiff's liability and Med Pay claims, showing Plaintiff's injuries to include five bulging discs, traumatic brain injury and emotional duress, Blake Ross of State Farm advised that "it appears the primary/underlying liability limits are adequate to compensate" at this time.

22.

On or about February 22, 2019, in reply to Plaintiff's demand of January 29, 2019 to State Farm for a "significant" unconditional tender, which demand was supplemented and reiterated on February 4, 2019, and following State Farm's request to Plaintiff on February 4, 2019 for medical records to support the medical necessity of a brain MRI/DTI for purposes of Med Pay reimbursement, which supporting documentation was supplied on February 5, 2019 and the diagnostic expenses reimbursed, and following Plaintiff's production on February 14, 2019 of

additional TBI related records, State Farm unconditionally tendered only five thousand ($5,000.00) dollars to Plaintiff under the State Farm Policy UM benefits, which Ms. Blake Ross advised was "to consider the soft tissue injury with a concussion."

23.

On or about April 30, 2019, when pressed by Plaintiff for the rationale of only a $5,000 unconditional tender made on or about February 22, 2019, Ms. Ross of State Farm advised through recorded telephone conference of its discovery of seven (7) insurance claims found by herself under the Plaintiff's Social Security number.

24.

Subsequent to State Farm's disclosure of the "seven claims" it had discovered, for which Ms. Ross provided Plaintiff the dates, Plaintiff investigated all with Progressive Insurance Co., her insurer at all relevant times, and replied with comprehensive information to State Farm the same day via Letter of April 30, 2019, that consistent with her representations made prior, only one of the said claims related to her and any vehicular accident, namely, an accident in June 2013 that occurred when Plaintiff backed into a vehicle in a parking lot and underwent physical therapy for a few months in 2013 and then chiropractic treatment in 2016, which was continued through February of 2018 as part of a strengthening program, with any lingering symptoms having resolved by early 2018.  State Farm, however, expressly repeatedly failed to make any additional unconditional tender based upon the documentation and information in its possession at that time, which Plaintiff avers constitutes early inaction reflecting of bad faith.

25.

On June 24, 2019, via Letter to State Farm, Plaintiff expressly acknowledged State Farm's efforts to obtain additional medical records and invoicing to support her UM claim, and reiterated

her previous telephonic advices, that she would obtain the records and submit same with a demand to be prepared by an attorney retained for this purpose. Plaintiff, who is also an attorney, requested that State Farm consider the issue of confidentiality of records in an effort to mitigate Plaintiff's damages.

26.

On June 27, 2019, in follow-up to State Farm's prior request for additional medical records and reports, which now included, *inter alia*, a second brain MRI/DTI and neuropsychological examination, Plaintiff proposed that same be submitted with State Farm's express agreement that said records and reports be deemed confidential and not disclosed to anyone other than State Farm's employees, attorneys, agents and experts, which request was expressly declined by State Farm on July 19, 2019.

27.

Over the next seven to eight months, which was a continuation of the past months since the accident, Plaintiff's time and energy was consumed by treatment of her injuries and her efforts to avoid malpractice as regards legal matters for which she remained charged. Matters were continued, passed along to colleagues, and several new representations declined.

28.

On April 8, 2020, Plaintiff made joint demand for the State Farm UM Policy and her own Progressive Ins. Co. UM Policy and Med Pay benefits, which Progressive UM policy, pursuant to La. R.S. 22:1295(1)(c)(i), follows second in priority behind the State Farm UM Policy. Said demand included satisfactory proof of loss (including medical records and bills and an extensive quantum case law analysis of Plaintiff's injuries) and that Aime Perrilloux was at fault and underinsured.

29.

It was the beginning of May, 2020, before Plaintiff was contacted by State Farm's counsel regarding her demand. An Examination Under Oath was requested and agreed to occur on May 7, 2020, which went forward via ZOOM conferencing in light of the Covid 19 pandemic.

30.

Under cover dated May 7, 2020 from State Farm adjuster Blake Ross, State Farm unconditionally tendered twenty-two thousand nineteen dollars and forty-seven cents ($22,019.47) to Plaintiff pursuant to the State Farm UM Policy "as a sign of good faith related to your claimed soft tissue injuries."

31.

On the same date, May 7, 2020, Plaintiff submitted to the first of State Farm's two-part Examination Under Oath (EUO), followed on May 11, 2020 by the second.

32.

Over the following weeks, through May 21, 2020, per State Farm's request, Plaintiff submitted requested documentation to include, *inter alia*, signed authorizations to obtain tax returns for the years requested; spreadsheets reflecting her firm's gross revenues for the years in question, as kept in the ordinary course of business and subsequently modified and submitted per State Farm's request, e.g., as to whether hourly or contingent work, etc.; authorization to obtain health insurance claim only information (so State Farm could be quieted as to "are there any other doctors out there they don't know about"); pharmacy records (redacted only as to irrelevant pre-accident ob/gyn prescription history, which Plaintiff offered to discuss with State Farm counsel, who refused unless such discussions could be under oath); and twenty (20) signed valid HIPAA authorizations for State Farm to obtain in most cases duplication of records already in its

9

possession. Further, Plaintiff made no objection to undergo Independent Medical Examinations that State Farm counsel advised were being organized.

33.

During Part II of Plaintiff's Examination Under Oath conducted by State Farm on May 11, 2020, State Farm repeatedly refused to allow Plaintiff to address fully the facts regarding her injuries and treatment related to the 2013 accident, and instead only agreed to accept same as an exhibit to the EUO, which of course does not equate to sworn testimony. The transcripts of State Farm's two-part Examination Under Oath of the Plaintiff make clear that State Farm was only interested in investigating defenses to payment and not the merits of the Plaintiff's claim.

34.

During State Farm's "investigation" following Plaintiff's demand of April 8, 2020 and two-part Examination Under Oath, the Plaintiff made repeated request for the State Farm liability, UM and Med Pay claim files, respectively, along with a copy of Dr. Clawson's policy outlining her obligations under the State Farm Policy, a read and sign copy of the EUO transcript (due to known and possible errors resulting from memory issues), and also permission to contact State Farm directly, as Blake Ross continued to send communications directly to Plaintiff, which contained false, incomplete, misleading and/or ill-informed allegations, as to Plaintiff's cooperation with State Farm's "investigation."

35.

After several unacknowledged requests, on May 20, 2020, counsel for State Farm finally provided a copy of Dr. Clawson's State Farm Policy outlining Plaintiff's obligations, which Plaintiff avers have been adhered to in full. Photocopy of the EUO transcript, without any read

and receipt or request for corrections, was finally provided by counsel for State Farm on June 23, 2020.

36.

As of this date, State Farm has refused to acknowledge Plaintiff's request for the said claim files and refuses to state whether Plaintiff may communicate directly with State Farm, who again, continues to correspondence with the Plaintiff, with the latest communications reflecting State Farm's correspondence of June 23, 2020, wherein Blake Ross advises that the Plaintiff's claim is denied based on alleged failure of the Plaintiff to cooperate with State Farm's investigation, which she supported with false, incomplete, misleading and/or ill-informed allegations, as to Plaintiff's efforts to cooperate. State Farm's counsel's refusal to acknowledge or reply to Plaintiff's request to communicate with State Farm directly was especially worrisome for the Plaintiff in light of counsel for State Farm advise on August 3, that she continues to represent State Farm, but has closed her file on Plaintiff's matter. Clarification as to whether counsel for State Farm continued to represent State Farm on Plaintiff's matter was additionally requested and wholly ignored.

37.

Being a lawyer herself, Plaintiff repeatedly advised State Farm, first through Ms. Ross and then through State Farm's counsel, that if she had to retain counsel to obtain the policy, which was unequivocally due, that she would seek to obtain full recovery of all penalties, costs and attorney fees under applicable law, for State Farm's bad faith handling of her claim.

38.

Not only has State Farm failed to tender amounts unequivocally due, State Farm's Ms. Ross took further action to harass Plaintiff by hijacking one of Plaintiff's firm's personal injury client matters so that Plaintiff, who State Farm knows is a sole practitioner, would be forced to

communicate directly with the same adjuster that has performed arbitrary and capricious adjusting of her own claim. Plaintiff's discovery of this situation occurred on or about May 13, 2020, and caused the Plaintiff extreme emotional distress unlike any before, which caused chest pains lasting two days. Both the hijack and its intense adverse emotional impact upon Plaintiff's person was immediately conveyed to State Farm's counsel, and the adjuster was removed from the unrelated firm client matter the next day. Plaintiff took Ms. Ross's action of hijacking the said unrelated State Farm claim as an overt act of harassment meant to bully the Plaintiff as regards her own claim, and to dissuade her from performing her professional obligations on her firm matters, which performance was already strained at best, and conveyed this to State Farm.

39.

On June 21, 2020, Progressive Insurance Co., Plaintiff's UM and Med Pay insurer second in priority after the UM benefits provided by the State Farm Policy, advised it was tendering the Progressive UM and Med Pay Policy benefits in full, which information and documentation was forwarded to counsel for State Farm the same day, followed by proof of said Progressive policy limits and the full tender shortly thereafter.

40.

State Farm has failed to tender the full limits of the State Farm UM Policy of $250,000 in UM coverage despite being provided proof of plaintiff's: (1) Post-concussion syndrome; (2) Traumatic brain injury (TBI); (3) Psychological injury; (4) Jaw injuries, including: bilateral TMJ pain; (5) Neck injuries, including one cervical bulging disc (C5-6); (6) Left shoulder injuries, including: rotator cuff strain/contusion, scapular dyskinesia, tendinitis, and bursitis; (7) Soft tissue defect (indentation) along the lateral aspect of the mid arm (8) Upper and lower back injuries, including: bulging/protruding thoracic disc that effaces the thecal sac (T10-11) and three bulging

lumbar discs (L2-3, L3-4 and L4-5); (9) Pelvic injuries; (10) Bilateral knee injuries; and (11) Left hand/finger injuries.

41.

Plaintiff's damages far exceed the total of the $15,000.00 tendered by State Farm pursuant to the liability insurance policy procured by Aime Perrilloux, State Farm's two unconditional tenders totaling $27,019.47 made pursuant to UM benefits under Dr. Clawson's State Farm Policy, and the $25,000 payments made under the Med Pay benefits of the State Farm Policy. Plaintiff's damages far exceed the full limit of $250,000 in UM coverage.

42.

The Defendant, State Farm has acted arbitrarily and capriciously in the following, non-exclusive ways:

a. Failing to make an unconditional tender within 30 days after receipt of satisfactory proof of loss in accordance with, but not limited to, La. R.S. 22:1892 and 22:1973;

b. Failing to properly settle the claim in a timely manner after receipt of satisfactory proof of loss in accordance with but not limited to La. R.S. 22:1892 and 22:1973;

c. Failing to timely investigate the veracity of the claim; and

d. Failing in any and all other ways not specifically listed or included herein but which shall be proven at the trial on the merits.

43.

As a result of State Farm's harassing tactics, its position that Plaintiff is not cooperating as the reason to deny further benefits and close the claim, and its failure to tender the remainder of the policy limits at issue, Plaintiff is suffering further physical and emotional damages, including but not limited to exacerbation of her brain injury symptoms, all of which has caused and continues to cause decreased productivity and increased treatment expense.

44.

Plaintiff's bad faith damages include:

13

a. A penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from State Farm to Karen S. McInnis, or one thousand dollars, whichever is greater, pursuant to La. R.S. 22:1892 (B) (1);

b. Reasonable attorney fees and costs, pursuant to La. R.S. 22:1892 (B) (1);

c. Any general damages to which Karen S. McInnis is entitled for State Farm's breaches of the duties of good faith, fair dealing, adjust claims fairly and promptly, and to make a reasonable effort to settle claims with its insured, pursuant to La. R.S. 22:1973 (C);

d. Any special damages to which Karen S. McInnis is entitled for State Farm's breaches of the duties of good faith, fair dealing, adjust claims fairly and promptly, and to make a reasonable effort to settle claims with its insured, pursuant to La. R.S. 22:1973 (C);

e. Penalties assessed against State Farm in an amount of up to two times the damages sustained or five thousand dollars, whichever is greater, pursuant to La. R.S. 22:1973 (C).

45.

This filing of this complaint is timely as it was filed within the statutory two-year prescriptive period pursuant to La. R.S. 9:5629.

WHEREFORE, Plaintiff prays that defendant State Farm be duly cited and served with a copy of this complaint and, after all due proceedings are had, there be a judgment in favor of Plaintiff and against the defendant, State Farm, for such monetary damages as are reasonable in the premises of this action, including all applicable statutory penalties and attorney's fees provided by law, all together with legal interest thereupon from the date of judicial demand until paid and for all such general and equitable relief as the nature of the case may permit.

Respectfully Submitted,

/s/  Eberhard D. Garrison
Eberhard D. Garrison (#22058)
JONES, SWANSON, HUDDELL & GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
egarrison@jonesswanson.com
Counsel for Plaintiff

Karen S. McInnis (#32199)
MCINNIS LAW FIRM LLC
2315 Florida St., Bldg. 200, Ste. 201
Mandeville, Louisiana 70448
Telephone: (985) 612-7217
Facsimile: (985) 590-5008
Email: ksmcinnis@mcinnislawfirm.com
Counsel for Plaintiff


PLEASE RETURN FOR SERVICE
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
through the Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809